KARINE BASMADJIAN, Esq. (SBN 170709)
**BASMADJIAN LAW GROUP, APC**
520 East Wilson Ave. Ste. 220
Glendale, CA 91206
Telephone: (818) 500-3921
Fax: (818) 500-3936
Email: KarineBLaw@gmail.com

Attorney for Defendant
Billy Edward Frederick

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>vs.<br><br>BILLY EDWARD FREDERICK,<br>           Defendant | Case No.: 2:21-cr-00340-DSF<br><br>DEFENDANT BILLY FREDERICK'S<br>SENTENCING POSITION<br>SENTENCING DATE: OCTOBER 24, 2022<br>SENTENCING TIME: 09:00 A.M.<br>THE HONORABLE DALE S. FISCHER |

    Defendant Billy Frederick by and through his attorney of record, Karine Basmadjian, hereby submits his Sentencing Memorandum pursuant to Federal Rule of Criminal Procedure 32, setting forth the factors the Court should consider in determining what type of sentence is "sufficient but not greater than necessary" to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

    For the reasons set forth in the attached memorandum, Mr. Frederick respectfully requests that the Court impose a sentence of the mandatory minimum in Count 1, concurrent with Count 2,

along with such other specified terms and conditions that the Court deems just and proper to achieve sentencing objectives. The requested sentence would be "sufficient but not greater than necessary to achieve the purposes of sentencing.

DATED: September 15, 2022

Respectfully submitted,

/s/ *Karine Basmadjian*

_____
Karine Basmadjian
Attorney for Defendant,
Billy Frederick

**TABLE OF CONTENTS**

I. INTRODUCTION　　　　　　　　　　　　　　　　　　　　　　　　4

II. ARGUMENT　　　　　　　　　　　　　　　　　　　　　　　　　6

III. THE GUIDELINES ARE ADVISORY, NOT PRESUMED REASONABLE AND ONLY FACTOR WHICH THE COURT MUST CONSIDER AS PARTY OF THE STATUTORY PURPOSE OF SENTENCING.　　　　　　　　　　　　　12

IV. MANDATORY MINIMUM SENTENCE IS WARRANTED GIVEN THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT PER § 3553　　　　14

V. CONCLUSION　　　　　　　　　　　　　　　　　　　　　　　　18

EXHIBIT B (Letter from Billy Frederick)　　　　　　　　20

EXHIBIT C (Letters of Character Reference 1)　　　　　23

EXHIBIT D (Letters of Character Reference 2)　　　　　27

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.
## INTRODUCTION

Defendant Billy Edward Frederick wanted to help financially the people he saw as his friends in the Philippines, not hurt them. Unfortunately, because of his history of having been molested and his chronic psychiatric disorders, including his addiction to pornography and lack of capacity to create substantive intimate interpersonal relationships, Mr. Frederick's decision-making ability became impaired, and he lost self-control. He inadvertently created a situation in which the shame and humiliation he felt as a child victim was repeated. He has expressed remorse and sorrow at what has happened and has been overwhelmed and even confused by his role in his crime. He seeks compassion, understanding and sympathy now as he heals from the trauma he experienced and inflicted.

In addition, Mr. Frederick respectfully disagrees with the findings set forth in the Presentence Report. In particular, Mr. Frederick submits that only the specific offense characteristics agreed to in the Plea Agreement should apply, and that the PSR erroneously applies unnecessary adjustments. See PSR ¶¶28-39. Mr. Frederick further submits that the court should depart downward or grant a variance based on the extremely low

likelihood of recidivism, and the likelihood that therapy will serve the same goals of incarceration while also helping him to return to being a functioning member of society, as opined by Dr. Kevin Booker in the report attached as Exhibit A.  It is thus Defendant's position that a sentence of mandatory minimum of 15 years on Count 1, concurrently with Count 2, and supervised release, is sufficient to serve the purposes of sentencing in this case.

*A: PLEA AGREEMENT*

Pursuant to the Plea Agreement, Mr. Frederick agreed not to contest the following enhancements to the Offense Level: (1) pursuant to USSG §2G2.1(b)(1), a +4 enhancement for an offense involving a minor who had not attained the age of 12 years old; (2) pursuant to USSG §2G2.1(b)(2)(A), a +2 enhancement for an offense involving the commission of a sexual act or sexual conduct; and (3) pursuant to USSG §2G2.1(b)(3), a +2 enhancement for forwarding a photograph depicting a naked minor.

Thus, beginning at the Base Offense Level of 32, these agreed-upon enhancements bring the level to 40.

Defendant agrees with -2 departure for Acceptance of Responsibility, as Mr. Frederick demonstrated a full acceptance of responsibility in this case and has shown remorse.

**II.
ARGUMENT**

A: *GUIDELINE CALCULATIONS*

**i.  The Defendant objects to the 4-level enhancement for sadistic or masochistic conduct or other depiction of violence.**

The PSR improperly adds a 4-level enhancement pursuant to USSG §2G2.1(b)(4) based on the allegation that the acts depicted are sadistic or masochistic. This enhancement does not apply in this case. "Sadistic" means deriving pleasure from inflicting pain, suffering or humiliation on others. Here, Mr. Frederick did not inflict any pain or suffering on anyone else. The PSR apparently concludes that all homosexual penetration is sadistic, *see* ¶35 (describing anal penetration) which is obviously not a valid conclusion. In any event, the victim describes why he was *unable to* engage in that activity, so there is no evidence that in fact the act was sadistic. *Id.* ("sorry if I can't take in").

Finally, the PSR concludes that the use of the word "master" somehow indicates a "possible painful psychological or emotional experience." There is no basis for this conclusion. First, of course, the PSR notes it is only "possible." It is equally "possible" that "master" is used as an honorific. It is also unclear if English is the first language of Victim #1 and whether he is using "master" translated from his native language

to mean some form of respect. Indeed, according to *Webster's New Collegiate Dictionary*, an overwhelming majority of the definitions for "master" have positive connotations relating to academic success, artistic skill, or even the male head of a household.

For these reasons, there is no support for the PSR's 4-level enhancement on this basis.

### ii. The Defendant objects to the 2-level enhancement for an unusually vulnerable victim.

The PSR also improperly asserts an enhancement pursuant to USSG §3A1.1(b)(1) on the basis of the age of the victims. However, Application Note 2 specifically states that such an enhancement is inappropriate in this case, where the age of the victim has already been considered in the offense itself:

> Do not apply subsection (b) if the factor that makes the person a vulnerable victim is incorporated in the offense guideline. For example, if the offense guideline provides an enhancement for the age of the victim, this subsection would not be applied unless the victim was unusually vulnerable for reasons unrelated to age.

Here, 18 U.S.C. §2251(c)(1) already specifically incorporates the age of the victim as it explicitly applies only to minors, so this enhancement does not apply. The PSR does not provide sufficient support to show that the victims here were "unusually vulnerable for reasons unrelated to age."  The PSR again relies

on the argument that the victims refer to the defendant as "master," but as set forth above, that does not establish anything for which defendant should be punished. The PSR also asserts that defendant "asserted dominance," but there is no evidence of any physical danger or fear that would make these victims uniquely vulnerable. Nor does it matter that he "set rules for them." He was conducting business transactions; that the photographs met his specifications does not indicate any unique vulnerability of the victims.

For these reasons, there is no support for the PSR's 2-level enhancement on this basis.

This brings the Adjusted Offense Level (subtotal) down to 42, from the 48 proposed in the PSR.

### iii. The Defendant objects to the 5-level enhancement for repeat and dangerous sex offender

The PSR also calculates a 5-point enhancement for repeat and dangerous sex offender, albeit improperly. The offenses used in the calculation for the enhancement, are predicate offenses in this very instance, already used in the calculation of the base guideline level. Additionally, Chapters 2 and 3 of USSG §4B135(b)(1) describes the necessary offenses for the calculation for purposes of a plus 5 enhancement as prior convictions, of which Mr. Frederick has none. In fact, the only offense(s) Mr. Frederick has ever had are the charges against

him in this instant matter, which he pled to, and which have already been used in base guideline calculations and should not be counted again to further enhance the guideline calculations. Mr. Frederick has not been convicted of any offense, therefore a 5-point enhancement is not applicable.

### B. *APPLICATION OF §3553(a) FACTORS MILITATES IN FAVOR OF VARYING DOWNWARD*

Mr. Frederick respectfully requests that given the circumstances of his case, including his acceptance of responsibility, remorse, history of abuse, family history and psychological disorders, as well as the extremely low likelihood of recidivism, the court should exercise its discretion to depart downward from the advisory guidelines.

The Supreme Court has held that the federal sentencing guidelines are advisory, not mandatory. *Booker v. United States*, 543 U.S. 220, 224 (2005). Judges must consider the guidelines, of course, when determining a criminal defendant's sentence. When a judge determines within his or her discretion to depart from the Guidelines, the judge must explain what factors warranted the increased or decreased sentence. The sentencing court must look at the totality of the sentencing factors, including the nature and characteristics of the defendants, the need to protect the public, the severity of the crime,

rehabilitation and punishment, and the advisory guidelines themselves. The court must reach a sentence that is sufficient, but not greater than necessary, to fulfill the statutory goals of sentencing under 18 U.S.C. §3553(a). In this case, the recommended sentence of life imprisonment is "greater than necessary" to serve the sentencing objectives. *See Kimbrough v. United States*, 552 U.S. 85 (2007).

First, and most importantly, Mr. Frederick is highly unlikely to commit this or any other offense again and is not a danger to the public. His Forensic-Psychological Assessment shows that he exhibits a very low risk — only about 15% - for recidivism. Indeed, the Assessment concludes that "intensive, long-term psychotherapy" is a more effective method of managing his risk than life in prison. His best chance of success is to "participate in highly structured, sex offender treatment programming with intensive social media monitoring to clinically address his deviant, compulsive sexual (pornography) addiction." He "poses a lower risk for repeated possession of child pornography as compared with defensive and inculpable subjects." He "possesses the ability to learn, to follow rules and to make responsible decisions." This last part is key, because he suffered from impaired executive control as a result of his addiction, and exhibited "habitual, 'out-of-body', automatic behavior," the control of which is possible, likely and his desired outcome.

The court should also consider Mr. Frederick's history and characteristics. He was the victim of abuse several times and for many years during his formative teenage years and carried the shame of that abuse with him. This history of sexual exploitation, molestation and child rape directly led to his behavior in this case. In suppressing the trauma he experienced, Mr. Frederick engaged in behaviors to alleviate the negative mental states he experienced. He has been addressing that trauma and seeing how it caused him to act out and perversely repeat those behaviors against other young victims. Mr. Frederick has also been making drastic improvements to his physical health, which in the past was a key factor in his mental health. He suffered crippling headaches; he has now lost weight, is managing his diabetes without medication and no longer has the headaches. He thus no longer seeks the escape from the physical pain he experienced.

Next the court should vary downward based on Mr. Frederick's family and community support. He has been in a long-term committed relationship since 1994 and has a good relationship with his mother, with whom he had a business and who is paying his legal fees. In addition, Mr. Frederick has entered into a stipulation pursuant to which he has agreed to pay restitution in the amount of $8,000.00. That restitution will be paid before he is sentenced.

Finally, the court should consider that Mr. Frederick's behavior is a total deviation from his life. A court can vary downward where, as here, a defendant's criminal conduct represents an anomalous deviation from an otherwise law-abiding life. *United States v. Dallman*, 533 F.3d 755, 671 (9th Cir. 2008). Mr. Frederick is educated, law-abiding, has always had a job. Though he has never minimalized his conduct or externalized blame, he has been overwhelmed by the gravity and seriousness of his case, in part because it is so out of character with the rest of his life. He considers himself generally a kind and thoughtful person; indeed, his initial motivation for his behavior in this case was to help people get out of poverty and difficult situations.

### III.
**THE GUIDELINES ARE ADVISORY, NOT PRESUMED REASONABLE AND ONLY FACTOR WHICH THE COURT MUST CONSIDER AS PARTY OF THE STATUTORY PURPOSE OF SENTENCING**

The Supreme Court's decision has not only rendered federal sentencing guidelines advisory, but have called upon other courts, and the entire federal criminal justice system, to reevaluate and recalibrate the grounds upon which sentences are imposed. Booker v. United States, 543 U.S. 220, 224 (2005); Kimbrough v. United States, 128 S. Ct. 558 (2007). Courts are asked to look at the totality of sentencing factors, including nature and characteristics of the defendant, the need to protect

the public, the severity of the crime, rehabilitation and punishment, and the advisory guidelines. Courts are to order a sentence that is sufficient, but not greater than necessary, to fulfill the statutory goals of sentencing under 3553(a).

18 U.S.C. § 3553(a) provides that the court consider, "the nature and circumstances of the offense and the history and characteristics of the defendant. The statute requires the court to consider the general purpose of sentencing, including the need for the sentence imposed to:
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. § 3553(a)

The Supreme Court has held that a sentencing court may consider that the guideline sentence should not apply "because the guideline sentence fails to properly reflect § 3553(a) considerations." Rita v. United Stated, 127 S. Ct. 2456, 2465 (2007). Accordingly, this Court may reject the advisory guidelines in this matter because they are primarily loss-driven and do not reflect any other considerations required by section § 3553(a) such as the history and characteristics of the defendant, mental health, employment history, or family ties. These factors must be considered when determining an appropriate sentence. § 3553(a).

Moreover, the court in Kimbrough v. United States, 128 S. Ct. 558 (2007), held that a district court may reject the guideline range if it finds that the range itself is "greater than necessary" to serve the sentencing objectives. In

13
DEFENDANT'S SENTENCING POSITION

Kimbrough, the Supreme Court found that the guidelines for drug offense levels established by the Sentencing Commission were not based on "empirical data and national experience" but by mandatory minimums set by Congress. The Court thus held that where guidelines do not reflect the Commission's institutional role and are not based on empirical data and national experience, it is an abuse of discretion for the district court to order a sentencing that is "greater than necessary" to achieve the purpose of § 3553(a). Kimbrough, 128 S. Ct. at 594.

In United States v. Nelson, 129 U.S. 890 (2009) the Supreme Court held that guidelines are not mandatory and not presumed to be reasonable. The district court must first calculate the applicable guideline, then hear arguments as to why the guidelines do not properly reflect § 3553(a) considerations. Rita v. United States, 551 U.S. 338, 351 (2007).

**IV.**

**MANDATORY MINIMUM SENTENCE IS WARRANTED GIVEN THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT PER § 3553**

First and foremost, the offenses outlined in this matter, including the Counts to which Mr. Frederick has pled guilty, were committed prior to 2020 (PSR ¶45), and Mr. Frederick has been in custody since June of 2021, by all accounts showing himself to be a model inmate. The man being sentenced in this matter is a repentant man, with intelligence and mental and spiritual capacity to understand his mistakes and to work for the rest of his life to make amends for his crimes, both to his

victims and to society at large.  While still coming to terms with the realization of what he has done, and still confused as to how and why he got himself to where he is, Billy Frederick is, nonetheless, able to and capable of understanding that a mistake is a mistake, regardless of causation, and that as far as he and the rest of his life are concerned, the responsibility for those mistakes lies on him, as well as the when's and how's of making amends.

A consideration of the sentencing factors further counsels in favor of imposing a less onerous sentence than the one recommended in the PSR.  Though the crimes in this case are of course serious, in this case Mr. Frederick is not the only one culpable of harm brought to these children, but he is the only one that can stand to face the justice that will be delivered here, in the United States.

In addition, Mr. Frederick has earned a Master's degree, and has worked hard all his life to earn a lawful living.  He is well respected by his clients and colleague alike due to his high work ethics, responsible attitude, and competency in the endeavors that he has undertaken.

Mr. Frederick was arrested and taken into custody at the age of 51, and until that time has never had any brush with the law, however minor. He has lived an upstanding life with this exception, and never taxed anyone with his presence or existence.

Also of critical importance to note, is where Mr. Frederick fits with other such cases of similar violations, and how recent Courts sentenced such others defendants.  Of note is the

sentencing of the notorious groomer for Jeffrey Epstein, Ghislaine Maxwell, who was sentenced in Manhattan Federal Court to 20 years of prison time.  This said defendant is similar in age to Mr. Frederick.  The differences, however, is where it matters, in that Ms. Maxwell's criminal career spans decades of impunity and abduction/grooming of young children, whereas Mr. Frederick's activity has been online, and incomparably shorter. Ms. Maxwell's crimes involved actual physical contact with and abuse of children, while Mr. Frederick's offenses involve no physical contact or violence of any sort.  Yet, the court found it necessary and sufficient to sentence Ms. Maxwell to 20 years of prison, plus 5 years of supervised release. Moreover, while Ms. Maxwell with Mr. Epstein actively searched for their victims, picking and choosing the most desirable for themselves and their clientele for exploitation, Mr. Frederick was himself the person sought out by his victims' handlers, who, on almost every documented occasion, were the ones that contacted him with various financial pleas in exchange for providing fodder to Mr. Frederick's pornographic dependencies.  In a sick way, Mr. Frederick felt that he is helping his victims financially with their less-desirable social conditions.  Lastly, while Ms. Maxwell, along with Jeffrey Epstein, being in the upper echelons of society, picked and chose the "youngest and most desirable among the herd" for sexual exploitation for themselves and their 1 percenter friends out of a feeling of privilege and entitlement, the other defendant here has clearly acted out of recapitulated childhood trauma.

A.  *THE COURT SHOULD VARY DOWNWARD BECAUSE MR. FREDERICK POSES VERY LOW RISK OF RECIDIVISM*

§ 3553 (a)(2) requires courts to consider the need for a sentence to prevent a defendant from engaging in future criminal conduct or endangering society. See 18 U.S.C. § 3553(a)(2)(B)-(C). In this view, Congress has advised that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society[.]" See Pub. L. No. 98-473, § 239, 98 Stat. 1987, 2039 (1984) (note to 18 U.S.C. § 3551).

Mr. Frederick is among the offenders least likely to recidivate because he himself took the steps, on his own accord, after his arrest, to actively work day and night to turn his life around to become a law-abiding, responsible citizen, achieving what is unfathomable to millions others like himself.

During a recent, in-custody evaluation of Mr. Frederick, Forensic Psychologist Kevin E. Booker, who specializes in sex-related crimes and is on several court panels as an expert witness, opined with respect to Billy's recidivism risk, in part stating:

"Given his insight into his behavior, as well as his expressed regret and the negative, psychological impact of his involvement in this [the offenses, being in custody, etc.] it is determined that Billy poses a 15.2% risk for repeated pornographic exploitation of children and is in need of psychotherapy with a Certified Sex Offender Treatment Provider (CSOTP) to arrest his overall sexual compulsion. Given the nature of Mr. Frederick's addiction, the most effective method of managing his risk for recidivism is through intensive, long-term psychotherapy to assist him in more fully appreciating the

relationship of compulsive sexual (pornography) addiction to his mood disorder and post-traumatic stress as a child rape survivor. " Indeed, long-term psychological treatment would act as a better deterrent for Mr. Frederick than lifetime incarceration would.

### B. THE COURT SHOULD VARY DOWN BASED ON MR FREDERICK'S FAMILY AND COMMUNITY SUPPORT.

Letters from Mr. Frederick's sister, Yvonne Hersh, and Barbara Goudey, his mother, show that Billy has always been a kind and quiet person, not shying away from taking on responsibilities, and being an asset in any given situation, from childhood until this present moment, where Billy uses his education and sophistication to help his fellow inmates with various document work, research, as well as any accounting related question.  Indeed, first items on his list when calling on meeting his mother, are for fellow inmates and their needs, before getting to what books he'd want to read next, or topics to research. A person who is able to, even when facing the uncertainty of his extended future and the realistically bleak prediction of how the next decade or so of his life will unfold, find it in themselves to think of helping others, is not the person to be confined to a life in prison.

## V.

## CONCLUSION

A life sentence is not warranted in this situation as it is simply cruel and unusual punishment given the fact that he had zero physical contact with his victims and that he was

always directly contacted by these victims for financial exploitation, given his psychological predisposition to pornography due to his own childhood sex trauma, rather than him seeking out the said victims himself. Mr. Frederick has fully cooperated, has expressed sincere remorse for his actions and has admitted responsibility, agreed to and will pay restitution prior to his sentencing, has a low likelihood of recidivism and does not pose a danger to society, is working to heal from the trauma and psychological disorders that affected his choices, and has led an otherwise law-abiding life. Accordingly, he respectfully submits that the court should sentence him to 15 years in prison on Count 1, to run concurrent with Count 2, followed by supervised released any such other terms that the Court may deem just and proper.

DATED: September 16, 2022

Respectfully submitted,

/s/ *Karine Basmadjian*
_____
Karine Basmadjian
Attorney for Defendant,
BILLY EDWARD FREDERICK